1    GLANCY PRONGAY & MURRAY LLP
2    Lionel Z. Glancy (#134180)
    Robert V. Prongay (#270796)
3    Lesley F. Portnoy (#304851)
4    Charles H. Linehan (#307439)
    1925 Century Park East, Suite 2100
5    Los Angeles, California 90067
6    Telephone: (310) 201-9150
    Facsimile:  (310) 201-9160
7    Email:  rprongay@glancylaw.com
8           info@glancylaw.com

9    *Attorneys for Plaintiff*

10

11

12

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO X. GARCIA, Individually and on Behalf of All Others Similarly Situated, <br><br>          Plaintiff, <br><br>      v. <br><br> BANC OF CALIFORNIA, INC., STEVEN A. SUGARMAN, RONALD J. NICOLAS, JR., and JAMES J. MCKINNEY, <br><br>          Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Fernando X. Garcia ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Banc of California, Inc. ("Banc of California" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Banc of California; and (c) review of other publicly available information concerning Banc of California.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Banc of California securities between October 29, 2015, and January 20, 2017, inclusive (the "Class Period"), against Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Banc of California is purportedly a financial holding company regulated by the Federal Reserve Board that serves California's private businesses and entrepreneurs.  The Company claims to offer a variety of financial products, including both deposit products offered through multiple channels that include retail banking, business banking, and private banking; and lending products including residential mortgage lending, commercial lending, commercial real estate lending, multifamily lending, and specialty lending including Small Business Administration lending, commercial specialty finance, and construction lending.

3.      On October 18, 2016, a *SeekingAlpha.com* contributor with the user name "Aurelius" published an article on *SeekingAlpha.com* entitled "BANC: Extensive Ties To Notorious Fraudster Jason Galanis Make Shares Un-Investible."

---

[1] "Defendants" refers collectively to Banc of California, Steven A. Sugarman, Ronald J. Nicolas, Jr., and James J. McKinney.

The article alleged that Banc of California's senior-most officers and board members had ties to Jason Galanis ("Galanis"), who the article claims has "long history of secretly gaining control of banks and public companies via front men, looting assets, and leaving unsuspecting investors and taxpayers with hundreds of millions in losses."  The article's summary of key research conclusions alleged that: (1) Galanis Controlled COR Capital, Banc of California's founding shareholder; (2) an off-balance sheet lender Controlled by Banc of California's senior-most officers financed Galanis; (3) Banc of California's lead "independent" director, Chad Brownstein, has strong ties to Galanis; and (4) there are parallels between Gerova Financial (which the article alleges was a financial institution that collapsed on the revelation of Galanis' secret control) and Banc of California.

4. On this news, Banc of California's stock price fell $4.61 per share, or 29%, to close at $11.26 per share on October 18, 2016, on unusually heavy trading volume.

5. On January 23, 2017, Banc of California announced its CEO resignation and that the United States Securities and Exchange Commission had opened an investigation into whether the Company had misled investors in its response to the October 2016 Seeking alpha report.

6. On this news the Company's shares fell $1.50 per share, or nearly 10%, to close on January 23, 2017 at $14.65 per share, on unusually high volume of over 6 million shares.

7. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had extensive ties to Galanis; (2) that, given Galanis' history, the Company's ties to Galanis created substantial regulatory risk; (3) that revelation of Galanis' ties to the Company could cause a substantial decline in the market price of the Company's

securities; (4) that the Company's communications to investors regarding the *Seeking Alpha* investigation was misleading; and (5) that, as a result of the foregoing, Defendants' positive statements about Banc of California's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

8.  As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.  The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's headquarters are located in this Judicial District.

12.  In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.  Plaintiff, as set forth in the accompanying certification, incorporated by

reference herein, purchased Banc of California securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.   Defendant Banc of California, Inc. is a Maryland corporation with its principal executive offices located at 18500 Van Karman Avenue, Suite 1100, Irvine, California.  During the Class Period, the Company's common stock traded on the New York Stock Exchange (the "NYSE") under the symbol "BANC."

15.   Defendant Steven A. Sugarman ("Sugarman") was, at all relevant times, the Chairman, President, and Chief Executive Officer ("CEO") of Banc of California until his abrupt resignation announced on January 23, 2017.

16.   Defendant Ronald J. Nicolas, Jr. ("Nicolas") was the Executive Vice President and Chief Financial Officer ("CFO") of Banc of California until November 10, 2015.

17.   Defendant James J. McKinney ("McKinney") was, at all relevant times, the Executive Vice President and Chief Accounting Officer ("CAO") of Banc of California until November 18, 2016.

18.   Defendants Sugarman, Nicolas and McKinney are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Banc of California's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being

made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

19.    Banc of California is purportedly a financial holding company regulated by the Federal Reserve Board that serves California's private businesses and entrepreneurs.  The Company claims to offer a variety of financial products, including both deposit products offered through multiple channels that include retail banking, business banking, and private banking; and lending products including residential mortgage lending, commercial lending, commercial real estate lending, multifamily lending, and specialty lending including Small Business Administration lending, commercial specialty finance, and construction lending.

### Materially False and Misleading
### Statements Issued During the Class Period

20.    The Class Period begins on October 29, 2015.  On that day, Banc of California issued a press release entitled "Banc of California Reports Third Quarter Earnings."  Therein, the Company, in relevant part, stated:

> IRVINE, Calif.--(BUSINESS WIRE)-- Banc of California, Inc. (NYSE: BANC) today reported net income of $14.5 million and net income available to common shareholders of $11.5 million, resulting in $0.29 per diluted common share for the quarter ended September 30, 2015.
>
> Net income available to common shareholders for the nine months ended September 30, 2015 was $36.2 million, resulting in $0.93 per diluted common share, compared to $17.4 million, resulting in $0.63 per diluted common share for the nine months ended September 30, 2014.
>
> Highlights for the third quarter, compared to the prior quarter, included:
>
> - Record quarterly core deposit growth exceeding $500 million (net of branch sales and offsetting the reduction in brokered and treasury deposits)
>
> - Record quarterly commercial banking segment loan originations

of $729 million (excludes mortgage banking originations)

- Noninterest bearing deposits increased by $143 million, or 17%, quarter over quarter and now exceed $1 billion

- Noninterest expenses declined by $6.2 million quarter over quarter

- Continued strong and stable asset quality

"The third quarter was highlighted by strong core deposit growth and accelerating loan originations in our commercial banking segment," said Steven Sugarman, Chairman and Chief Executive Officer. "We are especially pleased with the growth of noninterest bearing deposits during the quarter which reflect our team's success growing and deepening client relationships."

The Company's consolidated assets totaled $7.3 billion at September 30, 2015, an increase of $0.8 billion compared to the prior quarter, and an increase of $2.7 billion compared to a year ago. Return on average assets for the third quarter was 0.9%, and return on average tangible common equity was 12% for the third quarter.

"The third quarter results mark the sixth straight quarter since the reorganization of our bank's Board of Directors and management team in which the Company has exceeded consensus earnings estimates, and we are on pace to exceed analysts' full year 2015 consensus earnings estimates," Mr. Sugarman continued. "The Board and executive management team have set preliminary targets for 2016 that include earnings per share growth of 15%, return on average assets of 1% and return on tangible common equity of 15%. Additionally, in light of the benefits of scale we are beginning to see throughout the business, we are lowering our efficiency ratio target for 2016 by 5% to 65-70%."

21.     On November 6, 2016, Banc of California filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended September 30, 2015. The Company's Form 10-Q was signed by Defendants Sugarman, Nicolas, and McKinney, and reaffirmed the Company's financial results announced in the press release issued on October 29, 2015.

22.     On January 28, 2016, Banc of California issued a press release entitled "Banc of California Reports Record 2015 Earnings." Therein, the Company, in relevant part, stated:

IRVINE, Calif., Jan. 28, 2016 /PRNewswire/ -- Banc of California, Inc. (NYSE: BANC) today reported net income of $19.0 million for the fourth quarter of 2015, resulting in diluted earnings per share of $0.39 for the quarter and $1.34 for the full year.

Pre-tax income for the full year 2015 was $104.3 million, an increase of 294% compared to full year 2014. Net income available to common shareholders for 2015 grew to $52.2 million, an increase of 97% compared to full year 2014.

Highlights for the fourth quarter included:

- Record quarterly core deposit growth of $540 million; including $110 million from non-interest bearing deposits.

- Record quarterly commercial banking segment loan and lease originations of $914 million; resulting in $2.8 billion for the full year.

- Full year 2015 total loan originations of $7.1 billion.

- Commercial Banking profits increased to 90% of total, fully allocated segment profitability with Financial Advisory finishing at 9% and Mortgage Banking falling to 1% for the quarter.

- The Company's return on average assets for the quarter was 1.0%, and its return on average tangible common equity (ROTCE) for the quarter was 16.6%.

The Company's consolidated assets totaled $8.2 billion at December 31, 2015, an increase of $1.0 billion compared to the prior quarter, and an increase of $2.3 billion compared to a year ago.

"Banc of California finished 2015 with accelerating growth and profitability across our businesses," said Steven Sugarman, Chairman and Chief Executive Officer. "Our return on tangible common equity over 15% and return on assets over 1% demonstrates the long-term earnings power of our franchise. Combining these returns with our industry leading growth continues to yield significant value creation for shareholders. Our strong results are a testament to the hard work and dedication of our talented employees, who as employee-shareholders take pride in the shared success in growing the long-term value of the franchise. I am also particularly proud that Banc of California ranked #1 for total shareholder return in 2015 of all west coast banks included on Forbes Magazine's list of America's Top 100 banks."

23.     On February 18, 2016, Banc of California filed its Annual Report with the SEC on Form 10-K for the fiscal year ended December 31, 2015. The Company's Form 10-K was signed by Defendant Sugarman and reaffirmed the Company's financial results announced in the press release issued on January 28, 2016.

24.     On April 21, 2016, Banc of California issued a press release entitled "Banc of California Reports Record First Quarter Earnings." Therein, the

Company, in relevant part, stated:

IRVINE, Calif., April 21, 2016 /PRNewswire/ -- Banc of California, Inc. (NYSE: BANC) today reported record quarterly net income of $19.7 million for the first quarter of 2016, resulting in diluted earnings per share of $0.36 for the quarter.

Pre-tax income for the first quarter of 2016 was $33.0 million, an increase of 49% compared to first quarter of 2015. Net income available to common shareholders for the first quarter was $15.1 million, an increase of 30% compared to the first quarter of 2015.

Highlights for the first quarter included:

- Record quarterly non-interest bearing deposit growth of $278 million, or 25%.

- Quarterly commercial banking segment loan and lease originations of $823 million, an increase of 66% from a year ago.

- The Company's return on average assets for the quarter was 0.9%, and its return on average tangible common equity (ROTCE) for the quarter was 14.5%.

The Company's consolidated assets totaled $9.6 billion at March 31, 2016, an increase of $1.4 billion, or 17%, compared to the prior quarter, and an increase of $3.5 billion, or 58%, compared to a year ago. The Company's growth over this period has been entirely organic as Banc of California's last acquisition occurred in 2014.

"Based on total shareholder return since the beginning of 2015, Banc of California is the #1 performing bank stock amongst Forbes' Magazine's list of America's Top 100 Banks," said Steven Sugarman, Chairman and Chief Executive Officer of Banc of California. "In the first quarter of 2016 alone, Banc of California's 21% return outperformed the next closest bank by 7%. As all our employees are shareholders, we are proud and excited by this accomplishment. The continued strength of our financial performance showcases our strategy, focus and execution quarter-over-quarter as we are winning market share and top talent. Banc of California is a business built for the long-term."

During the first quarter, the Company raised $81 million in common stock, raised $125 million in Perpetual, Non-Cumulative Preferred Stock and liquidated its wholly owned subsidiary PTB Property Holdings LLC. Since the end of the first quarter, the Company has redeemed its $42 million preferred stock from the Small Business Lending Fund (SBLF), redeemed $85 million of 7.50% Senior Notes, announced the sale of its wholly owned subsidiary, The Palisades Group, LLC, and increased its undrawn line of credit to $75 million.

"Banc of California has meaningfully deleveraged and simplified its balance sheet, increased its liquidity and streamlined its businesses and organizational structure during 2016," said James McKinney, Chief Financial Officer of Banc of California. "We expect these actions will

not only make us a safer and stronger financial institution, but they will be accretive to the holders of our debt, preferred stock and common stock. These actions are part of our strategy to strengthen, and increase the durability of, our balance-sheet and liquidity in advance of our growth beyond $10 billion in assets. We will continue to seek opportunities to strengthen our franchise for the benefit of all our clients and other stakeholders."

During the quarter, Banc of California grew its recurring net interest income by $8 million, built its earning assets by $1.4 billion, and strengthened its liquidity position by $0.9 billion, while maintaining its net interest margin. These results occurred while the yield on the 10-year Treasury fell from 2.27% to 1.78%.

"We are proud that our interest rate risk controls and balance sheet management strategy enabled our bank to successfully navigate a volatile rate environment without impacting the consistency and predictability of our earnings," Sugarman said. "The negative fair value adjustments on our mortgage servicing rights and SWAPs were offset by concurrent intra-quarter fair value gains recognized in our securities portfolio. We believe this further validates the investments we have made and continue to make in our enterprise risk analytics and controls. Our analytical approach to building our balance sheet and our business continues to support our track record of consistent, growing earnings."

25.     On May 4, 2016, Banc of California filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended March 31, 2016. The Company's Form 10-Q was signed by Defendants Sugarman and McKinney, and reaffirmed the Company's financial results announced in the press release issued on April 21, 2016.

26.     On July 21, 2016, Banc of California issued a press release entitled "Banc of California Reports Record Second Quarter Earnings." Therein, the Company, in relevant part, stated:

IRVINE, Calif., July 21, 2016 /PRNewswire/ -- Banc of California, Inc. (NYSE: BANC) today reported record quarterly net income of $26.5 million for the second quarter of 2016, resulting in earnings per share of $0.43 for the quarter, fully diluted. Excluding $2.7 million of debt extinguishment costs related to the redemption of senior notes during the quarter, earnings per share for the second quarter was $0.46.

Pre-tax income for the second quarter of 2016 was $44.8 million, an increase of 63% compared to second quarter of 2015. Net income available to common shareholders for the second quarter was $21.4 million, an increase of 64% compared to the second quarter of 2015.

Highlights for the quarter included:

- Record quarterly deposit growth of $1.1 billion, or 16%, resulting in a reduction in quarter over quarter total interest expense.

- Record quarterly loan production of $2.6 billion, driven by record quarterly commercial banking segment loan and lease originations of $1.3 billion, an increase of 109% from a year ago.

- The Company's return on average assets for the quarter was 1.1% and its return on average tangible common equity for the quarter was 15.7%.

The Company finished the quarter with consolidated assets totaling $10.2 billion, an increase of $0.5 billion, or 6%, compared to the prior quarter, and an increase of $3.7 billion, or 58%, compared to a year ago. The Company's growth over this period has been organic as Banc of California's last acquisition occurred in 2014. Banc of California joins Pacific Western Bank, East West Bank, Cathay Bank and Silicon Valley Bank as the only mid-sized banks headquartered in California.

"Our strong second quarter performance is the direct result of our differentiated value proposition as California's Bank. Based on total shareholder return since the beginning of 2015, Banc of California is the #1 performing bank stock amongst Forbes' Magazine's list of America's Top 100 Banks," said Steven Sugarman, Chairman and Chief Executive Officer of Banc of California. "Banc of California's scale as a $10 billion bank is enabling the achievement of our long-term financial targets. This includes a return on tangible common equity over 15% and a return on assets over 1%. We are proud of these accomplishments. The consistent and strong financial performance showcases our strategy, focus and execution quarter-over-quarter. We are winning market share and we are winning top talent. Banc of California is a business built for the long-term."

During the second quarter, the Company raised $100 million in common stock, completed its redemption of $85 million of 7.50% Senior Notes and increased its line of credit to $75 million. The redemption of the senior notes directly resulted in non-core expenses related to capital transactions of $2.7 million during the quarter.

"Banc of California meaningfully deleveraged its balance sheet, increased its liquidity and strengthened its capital structure during the second quarter," said James McKinney, Chief Financial Officer of Banc of California. "We expect these actions will not only make us a safer and stronger financial institution, but they will be accretive to the holders of our debt, preferred stock and common stock. These actions are part of our on-going strategy to strengthen, and increase the durability of, our balance-sheet and liquidity as we grow beyond $10 billion in assets. We continue to seek opportunities to strengthen our franchise for the benefit of all our clients and other stakeholders."

During the quarter, Banc of California grew its recurring net interest income by $10.6 million, or 15% from the prior quarter, increased its total assets by $0.5 billion, reduced its total borrowings by over $0.6

billion, and maintained its net interest margin. These results occurred while the yield on the 10-year Treasury fell from 1.78% to 1.49%.

"We are proud that our interest rate risk controls and balance sheet management strategy enabled our bank to successfully navigate a volatile rate environment for the second quarter in a row without impacting the consistency and predictability of our earnings," Sugarman said. "The losses from negative valuation marks in our mortgage servicing rights and SWAPs were offset by concurrent fair market value gains realized in our securities portfolio. We believe this further validates the investments we have made and continue to make in our enterprise risk analytics and controls. Our analytical approach to building our balance sheet and our business continues to support our track record of consistent, growing earnings."

27. On August 4, 2016, Banc of California filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended June 30, 2016. The Company's Form 10-Q was signed by Defendants Sugarman and McKinney, and reaffirmed the Company's financial results announced in the press release issued on July 21, 2016.

28. The above statements contained in ¶¶20-27 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company had extensive ties to Galanis; (2) that, given Galanis' history, the Company's ties to Galanis created substantial regulatory risk; (3) that revelation of Galanis' ties to the Company could cause a substantial decline in the market price of the Company's securities; (4) that the Company's communications to investors regarding the *Seeking Alpha* investigation was misleading; and (5) that, as a result of the foregoing, Defendants' positive statements about Banc of California's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

29. On October 18, 2016, a *SeekingAlpha.com* contributor with the user name "Aurelius" published an article on *SeekingAlpha.com* entitled "BANC: Extensive Ties To Notorious Fraudster Jason Galanis Make Shares Un-Investible."

The article, in relevant part, stated:

> **Our research establishes that BANC's senior-most officers and board members have a broad mosaic of extensive and indisputable ties to Jason Galanis. We believe this introduces a significant un-discounted risk that notorious criminals gained control over the $10 Billion taxpayer guaranteed Banc of California.**

> Jason Galanis and his infamous father, John Galanis, have a **long history of secretly gaining control of banks and public companies via front men**, looting assets, and leaving unsuspecting investors and taxpayers with hundreds of millions in losses. The mere presence of a bank leadership team associated with Galanis should send diligent investors running for the hills.

> We see striking similarities between BANC and Gerova Financial, a $1 Billion NYSE listed financial institution that collapsed on the revelation of Galanis' secret control. Like BANC, Gerova's executives had significant ties to Galanis and touted their community reinvestment efforts with politicians to establish credibility. In the end, the promotion was a diversion from a giant fraud that left investors with devastating losses.

> ***As a result, we believe Banc Of California is simply un-investible.***

> A summary of key research conclusions we are releasing in this report include:

> - **Jason Galanis Controlled COR, BANC's Founding Shareholder.** SEC documents detail how Galanis gained control of COR portfolio companies to orchestrate the Tribal Bonds Ponzi Scheme. Galanis laid claim to Banc of California to display his financial wherewithal and even managed the scheme out of an office in the same building as BANC's headquarters.

> - **An Off-Balance Sheet Lender Controlled By BANC's Senior-Most Officers Financed Galanis.** Steven Sugarman holds an undisclosed interest in Camden Capital, an off-balance sheet lender controlled by BANC's Vice Chairman, Jeffrey Seabold. Camden was used to finance Galanis amidst the recent Tribal Bond Scheme and engaged in transactions with Galanis during the Gerova Financial fraud.

> - **BANC's Lead "Independent" Director Has Strong Ties To Galanis.** BANC's Lead "Independent" Director, Chad Brownstein, has strong ties to Jason Galanis, his indicted associates, and COR Capital. Mr. Brownstein also accepted an undisclosed loan from Camden that is secured by his Los Angeles Mansion but appears to finance his outside business ventures.

> - **We See Similarities Between BANC And Galanis' Gerova Financial fraud.** In wrapping BANC in the flag of "community reinvestment", Steven Sugarman has recycled a nearly identical narrative to what Galanis propagated at Gerova Financial. Further parallels include a leadership team and founding shareholder with

undisclosed ties to Galanis, a bevy of suspect related party transactions, and the use of opaque assets as regulatory capital.

30.     On this news, Banc of California's stock price fell $4.61 per share, or 29%, to close at $11.26 per share on October 18, 2016, on unusually heavy trading volume.

31.     The above statements contained in ¶29 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company had extensive ties to Galanis; (2) that, given Galanis' history, the Company's ties to Galanis created substantial regulatory risk; (3) that revelation of Galanis' ties to the Company could cause a substantial decline in the market price of the Company's securities; (4) that the Company's communications to investors regarding the *Seeking Alpha* investigation was misleading; and (5) that, as a result of the foregoing, Defendants' positive statements about Banc of California's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

32.     On October 18, 2016, the Company disclosed that:

Banc of California, Inc. (NYSE: BANC) today announced it is aware of allegations posted in a financial blog. The Company's Board of Directors has been aware of matters relating to Jason Galanis including certain claims he had made suggesting an affiliation with members of the Company, its Board, and/or its Executive team.  The Board, acting through its Disinterested Directors, immediately initiated a thorough independent investigation led by Winston & Strawn, and has received regular reports including related to regulatory and governmental communications over the past year.

The complaint filed by the Department of Justice against Mr. Galanis and others dated May 9, 2016, which is found here, clearly states that Mr. Galanis' claims to be affiliated with COR Capital were fraudulent.

See paragraphs 40 and 41 of the Sworn Statement of the Special Agent of the Federal Bureau of Investigation which states:

"40.  Based on my conversation with a representative of COR Capital, I have learned that, contrary to the representations made in the June 3, 2014 email sent by JASON GALANIS, the defendant, to MICHELE MORTON, the defendant, (referenced in paragraph 39c above), Burnham, CORFA and Wealth-Assurance AG were not affiliates of COR Capital.

41.  Based on my review of documents, I have learned that on June 3, 2014, JASON GALANIS, the defendant, sent an email to BEVAN COONEY, the defendant, which forwarded the email JASON GALANIS sent to MICHELLE MORTON, the defendant, earlier that same day, attaching the description of COR Capital which fraudulently asserted that certain entities were affiliates of COR Capital.  In JASON GALANIS's email to COONEY, JASON GALANIS wrote "whoring it out shamelessly[.]  thank you [first name of COR Capital representative.]"

Banc of California and its Disinterested Directors will make further facts publicly available as appropriate.

33.    The above statements contained in ¶32 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that the Company had extensive ties to Galanis; (2) that, given Galanis' history, the Company's ties to Galanis created substantial regulatory risk; (3) that revelation of Galanis' ties to the Company could cause a substantial decline in the market price of the Company's securities; (4) that the Company's communications to investors regarding the *Seeking Alpha* investigation was misleading; and (5) that, as a result of the foregoing, Defendants' positive statements about Banc of California's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis

34.     On January 23, 2017, Banc of California announced its CEO's, Defendant Sugarman, resignation and that the United States Securities and Exchange Commission had opened an investigation into whether the Company had misled investors in its response to the October 2016 Seeking alpha report.

35.     On this news the Company's shares fell $1.50 per share, or nearly 10%, to close on January 23, 2017 at $14.65 per share, on unusually high volume of over 6 million shares.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Banc of California securities between October 29, 2015, and January 20, 2017, inclusive (the "Class Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Banc of California's securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Banc of California shares were traded publicly during the Class Period on the NYSE.  As of July 28, 2016, Banc of California had 49,563,203 shares of voting common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Banc of California or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

1      38.    Plaintiff's claims are typical of the claims of the members of the Class

2 as all members of the Class are similarly affected by Defendants' wrongful conduct

3 in violation of federal law that is complained of herein.

4      39.    Plaintiff will fairly and adequately protect the interests of the members

5 of the Class and has retained counsel competent and experienced in class and

6 securities litigation.

7      40.    Common questions of law and fact exist as to all members of the Class

8 and predominate over any questions solely affecting individual members of the

9 Class.  Among the questions of law and fact common to the Class are:

10      (a)    whether the federal securities laws were violated by Defendants'

11 acts as alleged herein;

12      (b)    whether statements made by Defendants to the investing public

13 during the Class Period omitted and/or misrepresented material facts about the

14 business, operations, and prospects of Banc of California; and

15      (c)    to what extent the members of the Class have sustained damages

16 and the proper measure of damages.

17      41.    A class action is superior to all other available methods for the fair and

18 efficient adjudication of this controversy since joinder of all members is

19 impracticable.  Furthermore, as the damages suffered by individual Class members

20 may be relatively small, the expense and burden of individual litigation makes it

21 impossible for members of the Class to individually redress the wrongs done to

22 them.  There will be no difficulty in the management of this action as a class action.

23 **UNDISCLOSED ADVERSE FACTS**

24      42.    The market for Banc of California's securities was open, well-

25 developed and efficient at all relevant times.  As a result of these materially false

26 and/or misleading statements, and/or failures to disclose, Banc of California's

27 securities traded at artificially inflated prices during the Class Period.  Plaintiff and

28 other members of the Class purchased or otherwise acquired Banc of California's

securities relying upon the integrity of the market price of the Company's securities and market information relating to Banc of California, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Banc of California's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Banc of California's business, operations, and prospects as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Banc of California's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## **LOSS CAUSATION**

45.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

46.     During the Class Period, Plaintiff and the Class purchased Banc of

1   California's securities at artificially inflated prices and were damaged thereby.  The

2   price   of   the   Company's   securities   significantly   declined   when   the

3   misrepresentations made to the market, and/or the information alleged herein to

4   have been concealed from the market, and/or the effects thereof, were revealed,

5   causing investors' losses.

6                                          **SCIENTER ALLEGATIONS**

7            47.     As alleged herein, Defendants acted with scienter in that Defendants

8   knew that the public documents and statements issued or disseminated in the name

9   of the Company were materially false and/or misleading; knew that such statements

10  or  documents  would  be  issued  or  disseminated  to  the  investing  public;  and

11  knowingly   and   substantially   participated   or   acquiesced   in   the   issuance   or

12  dissemination of such statements or documents as primary violations of the federal

13  securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of

14  their receipt of information reflecting the true facts regarding Banc of California,

15  his/her control over, and/or receipt and/or modification of Banc of California's

16  allegedly  materially  misleading  misstatements  and/or  their  associations  with  the

17  Company   which   made   them   privy   to   confidential   proprietary   information

18  concerning Banc of California, participated in the fraudulent scheme alleged herein.

19                          **APPLICABILITY OF PRESUMPTION OF RELIANCE**
                            **(FRAUD-ON-THE-MARKET DOCTRINE)**
20

21           48.     The market for Banc of California's securities was open, well-

22  developed and efficient at all relevant times.  As a result of the materially false

23  and/or misleading statements and/or failures to disclose, Banc of California's

24  securities traded at artificially inflated prices during the Class Period.  On August 8,

25  2016, the Company's stock closed at a Class Period adjusted high of $22.99 per

26  share.  Plaintiff and other members of the Class purchased or otherwise acquired the

27  Company's securities relying upon the integrity of the market price of Banc of

28  California's securities and market information relating to Banc of California, and

1  have been damaged thereby.

2      49.    During the Class Period, the artificial inflation of Banc of California's

3  stock was caused by the material misrepresentations and/or omissions particularized

4  in this Complaint causing the damages sustained by Plaintiff and other members of

5  the Class.  As described herein, during the Class Period, Defendants made or caused

6  to be made a series of materially false and/or misleading statements about Banc of

7  California's business, prospects, and operations.   These material misstatements

8  and/or omissions created an unrealistically positive assessment of Banc of California

9  and its business, operations, and prospects, thus causing the price of the Company's

10  securities to be artificially inflated at all relevant times, and when disclosed,

11  negatively affected the value of the Company stock.  Defendants' materially false

12  and/or misleading statements during the Class Period resulted in Plaintiff and other

13  members of the Class purchasing the Company's securities at such artificially

14  inflated prices, and each of them has been damaged as a result.

15      50.    At all relevant times, the market for Banc of California's securities was

16  an efficient market for the following reasons, among others:

17          (a)    Banc of California stock met the requirements for listing, and

18  was listed and actively traded on the NYSE, a highly efficient and automated

19  market;

20          (b)    As a regulated issuer, Banc of California filed periodic public

21  reports with the SEC and/or the NYSE;

22          (c)    Banc of California regularly communicated with public investors

23  *via* established market communication mechanisms, including through regular

24  dissemination of press releases on the national circuits of major newswire services

25  and through other wide-ranging public disclosures, such as communications with the

26  financial press and other similar reporting services; and/or

27          (d)    Banc of California was followed by securities analysts employed

28  by brokerage firms who wrote reports about the Company, and these reports were

distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

51. As a result of the foregoing, the market for Banc of California's securities promptly digested current information regarding Banc of California from all publicly available sources and reflected such information in Banc of California's stock price. Under these circumstances, all purchasers of Banc of California's securities during the Class Period suffered similar injury through their purchase of Banc of California's securities at artificially inflated prices and a presumption of reliance applies.

52. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

53. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no

meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Banc of California who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Banc of California's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

56.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Banc of California's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful

and illegal conduct charged herein or as controlling persons as alleged below.

57.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Banc of California's financial well-being and prospects, as specified herein.

58.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Banc of California's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Banc of California and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

59.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant

times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

60.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Banc of California's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Banc of California's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Banc of California's securities during the Class Period at artificially high prices and were damaged thereby.

62.    At the time of said misrepresentations and/or omissions, Plaintiff and

other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Banc of California was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Banc of California securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

63.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of Banc of California within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by

1  Plaintiff to be misleading prior to and/or shortly after these statements were issued
2  and had the ability to prevent the issuance of the statements or cause the statements
3  to be corrected.

4       67.    In particular, each of these Defendants had direct and supervisory
5  involvement in the day-to-day operations of the Company and, therefore, is
6  presumed to have had the power to control or influence the particular transactions
7  giving rise to the securities violations as alleged herein, and exercised the same.

8       68.    As set forth above, Banc of California and the Individual Defendants
9  each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged
10  in this Complaint.  By virtue of their positions as controlling persons, the Individual
11  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct
12  and proximate result of Defendants' wrongful conduct, Plaintiff and other members
13  of the Class suffered damages in connection with their purchases of the Company's
14  securities during the Class Period.

15                               **PRAYER FOR RELIEF**

16       WHEREFORE, Plaintiff prays for relief and judgment, as follows:

17       (a)    Determining that this action is a proper class action under Rule 23 of
18  the Federal Rules of Civil Procedure;

19       (b)    Awarding compensatory damages in favor of Plaintiff and the other
20  Class members against all defendants, jointly and severally, for all damages
21  sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,
22  including interest thereon;

23       (c)    Awarding Plaintiff and the Class their reasonable costs and expenses
24  incurred in this action, including counsel fees and expert fees; and

25       (d)    Such other and further relief as the Court may deem just and proper.

26                           **JURY TRIAL DEMANDED**

27  Plaintiff hereby demands a trial by jury.

28

1  Dated:  January 23, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GLANCY PRONGAY & MURRAY LLP**


By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
Email: rprongay@glancylaw.com
            info@glancylaw.com

*Attorneys for Plaintiff*

# GLANCY PRONGAY & MURRAY LLP

**SWORN CERTIFICATION OF PLAINTIFF**
**Banc of California, Inc. Securities Litigation**

I, Fernando X Garcia, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase Banc of California, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Banc of California, Inc. during the Class Period set forth in the Complaint are attached in Exhibit A.

5. I have not served as a representative party on behalf of a class under this title during the last three years, except as follows:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.



Date: October 31 2016


[REDACTED]

**Fernando Garcia's Transactions in
Banc of California, Inc. (BANC)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 09/27/2016 | Bought | 100 | $17.5700 |